IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PRIVACY-ASSURED INC.,<br><br>                    Petitioner,<br><br>v.<br><br>ACCESSDATA CORPORATION LIMITED,<br><br>                    Respondent. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:14-cv-00722-CW<br><br>Judge Clark Waddoups |

## INTRODUCTION

Before the Court are Petitioner's Motion to Confirm Arbitration Award (Dkt. No. 2) and Respondent's Motion to Vacate, or Alternatively, to Modify Arbitration Award (Dkt. No. 7) relating to the arbitration of a dispute arising from the parties' AccessData Distributor Agreement (the "Agreement"). The Court heard oral argument on the motions on February 20, 2015, taking the matter under advisement. After carefully considering the parties' briefs and oral arguments, the Court GRANTS Petitioner's Motion and DENIES Respondent's Motion.

## FACTUAL BACKGROUND

Respondent AccessData Corporation Limited ("AccessData") is a manufacturer of software. (Agreement 2 [Dkt. No. 2-7].) AccessData is registered in England and Wales, with offices located in Lindon, Utah. (*Id.*) At the time Petitioner filed its Motion to Confirm, AccessData's main office appears to have been located in California. (*See* Mot. Confirm 3, ¶ 2 & n.2 [Dkt. No. 2].) Petitioner Privacy-Assured, Inc. ("Privacy") is incorporated in Canada and is a

distributor of software with its principal place of business in Ontario, Canada. (*See* Agreement 2 [Dkt. No. 2-7].) Around March 6, 2012, AccessData and Privacy entered into the Agreement with an effective date of January 19, 2012, through which Privacy obtained the exclusive right to sell certain AccessData products in Canada. (*See id*. at 2 & 13 [Dkt. No. 2-7].) The Agreement provided that any controversy arising from the Agreement would be settled by arbitration. (*Id.* at 11, § 13.9.) The Agreement also provided that "[t]he award rendered by the arbitrator will be final, binding, and, except as permitted by law, non-appealable." (*Id.*) Additionally, Section 7.4 of the Agreement provided that "[e]ach party's liability to the other party shall not exceed amounts paid or payable to AccessData" and that "[e]ach party shall only be allowed to collect said amounts for liabilities that are incurred in the most recent 12 months." (*Id.* at 7, § 7.4.) Privacy asserted that AccessData breached the exclusivity provision of the Agreement. (*See* Mot. Confirm 3, ¶ 5 [Dkt. No. 2].)

On March 13, 2013, Privacy filed a demand for arbitration, and the dispute was arbitrated in Utah. (Award 2 [Dkt. No. 2-3].) On July 29, 2014 the Arbitrator found that AccessData had breached the Agreement (*id*. at 7, ¶ 4) and awarded Privacy $2,559,000 (*id.* at 8, ¶ 1). The Arbitrator granted an award based on AccessData's sales for the entire period of the Agreement, approximately 24 months. (*See id*. at 7, ¶ 8; *see also id.* at 8, ¶ 1.) And the Arbitrator appears to have granted Privacy 40% of AccessData's gross sales revenue for this 24 month time period. (*See* Mot. Vacate 12 [Dkt. No. 7].)

On August 28, 2014, AccessData filed a post-hearing motion asking the Arbitrator to modify the amount of damages awarded, among other things. (*See* Resp.'s Post-Hrg. Mot. n.2 [Dkt. No. 2-4].) On September 30, 2014, the Arbitrator reaffirmed the original amount of damages awarded to Privacy. (*See* Disposition of Application for Correction of the Final Award 3 [Dkt.

2-6].) The Arbitrator specifically considered Section 7.4 in reaffirming the original amount of damages. (*See id.* at 1.) ("[T]he tribunal does not believe that it exceeded its authority in reaching a fair, reasonable, equitable decision in compliance with the terms of the Agreement and with the language of Section 7.4 of that Agreement.") On October 2, 2014, Privacy filed its Motion to Confirm. (Dkt. No. 2.) On October 27, 2014, AccessData filed its Motion to Vacate. (Dkt. No. 7.)

## ANALYSIS

**A.      The Convention/Jurisdiction**

The court must always satisfy itself as to its jurisdiction as a preliminary matter. The parties proceeded under a claim of diversity jurisdiction and attempted through an apparent, though faulty, invocation of *Eerie* to apply Utah law relating to confirming or vacating arbitration awards. (*See, e.g.*, Mot. Vacate iv [Dkt. No. 7].) After further investigation, the court concludes that its jurisdiction in this matter is not based in diversity. Rather, the court has original jurisdiction under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("The Convention"), as implemented in the United States under 9 U.S.C. § 201 *et seq.*

The Convention "is incorporated into federal law by the" Federal Arbitration Act ("F.A.A."). *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440 (11th Cir. 1998). "Chapter 2 of the [Federal Arbitration] Act, 9 U.S.C. §§ 201–208, mandates the enforcement of the . . . Convention in United States courts." *Id*. "Chapter 2 . . . creates original federal subject-matter jurisdiction over any action arising under the Convention." *Id*. "As an exercise of the Congress' treaty power and as federal law, 'the Convention must be enforced according to its terms over all prior inconsistent rules of law.'" *Id*. (quoting *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex),* 767 F.2d 1140, 1145 (5th Cir.1985)). "The Convention by its terms applies to only two sorts of arbitral awards: 1) awards made in a country other than that

in which enforcement of the award is sought, and 2) awards 'not considered as domestic awards in' the country where enforcement of the award is sought." *Id*. (quoting Convention art. I(1)). Because the Arbitrator granted the Award in Utah and enforcement is being sought in Utah, the Award does not fall within the first category. The second category relates to "nondomestic" awards.

The Convention provides that it will "apply to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." Convention art. I(1). "The Convention does not define nondomestic awards." *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 18 (2d Cir. 1997). But 9 U.S.C. § 202 provides that

> [a]n agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.

9 U.S.C. § 202. "[A]ll of our sister circuits that have considered this issue agree that § 202 contains the standard by which we determine whether an award is non-domestic under Article I(1) and therefore governed by the Convention." *Jacada (Europe), Ltd. v. Int'l Mktg. Strategies, Inc.*, 401 F.3d 701, 708 (6th Cir. 2005) *abrogated on other grounds by Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008). The Second Circuit has held "that awards 'not considered as domestic' denotes awards which are subject to the Convention not because made abroad, but because made within the legal framework of another country . . . *or involving parties domiciled or having their principal place of business outside the enforcing jurisdiction*." *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2d Cir. 1983) (quoting 9 U.S.C. § 201) (emphasis added). The Seventh Circuit has interpreted § 202 to mean that "any commercial arbitral agreement, unless it is between two United States citizens, involves property located in the United States, and has no reasonable relationship with one or more foreign states, falls under the Convention." *Jain v. de Mere*, 51 F.3d 686, 689 (7th Cir. 1995). And the Eleventh Circuit has read § 202 to "define all arbitral awards not

'entirely between citizens of the United States' as 'non-domestic' for purposes of Article I of the Convention." *Gutehoffnungshutte*, 141 F.3d at 1441.[1]

The court finds that the Convention governs in this case. Here, at least one of the parties to the dispute is a "nondomestic" corporation and the dispute "principally involved conduct and contract performance in [Canada]." *Yusuf* 126 F.3d at 19. AccessData is registered in England and Wales (Agreement 2 [Dkt No. 2-7]) but has offices in Utah and, at the time in issue, apparently had its main office in California (*See* Mot. Confirm 3, ¶ 3 & n.2 [Dkt. No. 2]). Privacy is incorporated in Canada. *Id.* The Agreement allowed Privacy to sell certain AccessData products in Canada. (*See id.* at 13.) Even if AccessData is deemed to have been a citizen of California at the time based on the location of its main office, the dispute is still non-domestic for purposes of the Convention, as discussed above, noting in particular the approach taken by several Circuits. *See also, e.g.*, *Calbex Mineral Ltd. v. ACC Resources Co., L.P.*, No. 13-276, 2015 U.S. Dist. LEXIS 31105, at *2-*3, n.1 (W.D. Pa, March 13, 2015). Thus, the court considers "the arbitral award leading to this action a non-domestic award and thus within the scope of the Convention." *Yusuf* 126 F.3d at 19.

Under the Convention, the court must therefore still consider domestic law as provided in the F.A.A. in deciding AccessData's Motion to Vacate.[2] As to Privacy's Motion to Confirm,

---

[1]  "We join the First, Second, Seventh, and Ninth Circuits in holding that arbitration agreements and awards 'not considered as domestic' in the United States are those agreements and awards 'which are subject to the Convention not because [they were] made abroad, but because [they were] made within the legal framework of another country, e.g., pronounced in accordance with foreign law *or involving parties domiciled or having their principal place of business outside the enforcing jurisdiction.* We prefer this broad[ ] construction because it is more in line with the intended purpose of the treaty, which was entered into to encourage the recognition and enforcement of international arbitration awards.'" *Gutehoffnungshutte,* 141 F.3d at1441 (quoting *Bergesen*, 710 F.3d at 932).

[2]  Technically, the legislation implementing the Convention in the United States, and the Convention itself, only provide for motions to confirm an award. *See* 9 U.S.C. § 207. But 9 U.S.C. § 208 can be interpreted—and the court believes rightly so—to incorporate the vacatur mechanism and substantive law of the F.A.A. under 9 U.S.C. §§ 9 & 10 in certain circumstances, "to the extent that chapter is not in conflict with [Chapter 2] or the New York Convention." 9 U.S.C. § 208; *see also* Richard W. Hulbert, *The*

"[u]nder the Convention, a district court's role is limited—it must confirm the award unless one of the grounds for refusal specified in the Convention applies to the underlying award." *Admart AG v. Stephen & Mary Birch Found.,* 457 F.3d 302, 307 (3d Cir. 2006). "Article V of the Convention sets forth the grounds for refusal [to confirm an award], and courts have strictly applied the Article V defenses and generally viewed them narrowly." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 290-91 (3d Cir. 2010), *as amended* Dec. 7, 2010 (internal quotation marks omitted).[3]  In response to the Motion to Confirm, AccessData "would have little chance of success" if it were strictly limited to the defenses to confirmation of an award

---

*Case for A Coherent Application of Chapter 2 of the Federal Arbitration Act*, 22 Am. Rev. Int'l Arb. 45, 67-76 (2011); Jarred Pinkston, *Toward A Uniform Interpretation of the Federal Arbitration Act: The Role of 9 U.S.C. § 208 in the Arbitral Statutory Scheme*, 22 Emory Int'l L. Rev. 639, 670-73 (2008).

[3]  Article V of the Convention provides the following grounds for refusal of an award:

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where recognition and enforcement is sought, proof that:
(a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or
(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:
(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or
(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

listed in Article V of the Convention." *Id*. at 291. The Court recognizes, however, that there is "more flexibility . . . when the arbitration site and the site of the confirmation proceeding were within the same jurisdiction." *Admart*, 457 F.3d at 308 (citing *Yusuf* 126 F.3d at 22-23). For example, the *Ario* Court noted that "[t]he *Yusuf* Court held that, under Article V(1)(e) of the Convention, the courts of the United States are authorized to apply United States procedural arbitral law, i.e., the domestic F.A.A., to nondomestic Convention awards rendered in the United States." *Ario*, 618 F.3d at 291-92 (internal quotation marks omitted).

The court agrees that "because the arbitration took place in [Utah], and the enforcement action was also brought in [Utah], [the court] may apply United States law, including the domestic F.A.A. and its vacatur standards." *Id*. However, the court finds that the "flexibility" in this process is more correctly located in 9 U.S.C. § 208, "which explicitly invokes the provisions of Chapter 1 [the F.A.A.] in Chapter 2 cases [under the Convention] . . . to the extent that they are 'not in conflict' with Chapter 2 or the Convention." Hulbert *supra* note 2, at 63. This allows the application of the F.A.A.'s statutory vacatur provisions in a "nondomestic" case governed by the Convention under these circumstances.

**B.      F.A.A.**

Because this nondomestic award is governed by the Convention, the F.A.A.'s vacatur standards apply in this case through 9 U.S.C. § 208, and not those found in the Utah Uniform Arbitration Act ("U.U.A.A."), as argued by AccessData. In its Motion to Vacate, AccessData stated that "[h]earing the present matter on diversity jurisdiction, this Court applies the substantive law of the forum state, in this case, Utah." (Mot. Vacate iv [Dkt. No. 7] (citing *Boyd Rosene & Assoc., Inc. v. Kansas Mun. Gas Agency,* 174 F.3d 1115, 1118 (10th Cir. 1999).) This is incorrect. As explained above, the court's jurisdiction is premised on the Convention's conferral of original jurisdiction

over the action. 9 U.S.C. §§ 202 & 203; *Gutehoffnungshutte*, 141 F.3d at 1440. As also noted above, the court finds that the F.A.A.'s statutory vacatur provisions apply to the extent allowable under 9 U.S.C. § 208, that is, "to the extent . . . not in conflict" with Chapter 2 or the Convention. *See* Hulbert, *supra* note 2 at 67-71. Moreover, other courts have found more generally that the "F.A.A. vacatur standards presumptively apply to Convention awards rendered and enforced in the United States." *Ario*, 618 F.3d at 290.

Under the F.A.A., after an arbitration award is made, any party to the arbitration may apply for an order confirming the award, and the court "must grant such an order unless the award is vacated, modified, or corrected . . . ." 9 U.S.C. § 9. "There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587, (2008).

One such exception, which allows for vacatur, is "where the arbitrators exceeded their powers . . . ." 9 U.S.C.§ 10(a)(4).[4] An arbitrator exceeds his power where he grants an award that is "contrary to the express language of the contract." *Int'l Union of Operating Engineers, AFL-CIO, Local No. 670 v. Kerr-McGee Ref. Corp.*, 618 F.2d 657, 659 (10th Cir. 1980) (citation omitted).

---

[4]  As noted in *supra* note 2, a number of courts and commentators have observed that the Convention is "silent as to substantive issues touching upon vacatur ('setting aside') and focuses on confirmation" such that "the grounds for defeating confirmation listed in Article V [of the New York Convention] are the exclusive means of challenging confirmation under the New York Convention and should not be intermixed with grounds to vacate pursuant to the F.A.A.," including 9 U.S.C. § 10. Pinkston, *supra* note 2, at 675; *see also* Hulbert *supra* note 2, at 67-71 (collecting cases). "As the [New York Convention] is generally silent on vacatur, the F.A.A.'s well-established, enumerated and limited grounds for vacating an arbitral award can be incorporated into the [New York Convention] as non-conflicting provisions pursuant to section 208, but only when the award was rendered in the United States." Pinkston, *supra* note 2, at 696. The court agrees that it is not restricted to considering the defenses to confirmation of an award enumerated in Article V of the Convention, particularly in such a case as this which falls under the Convention because the "nondomestic" award was granted in Utah by an arbitrator applying New York law. Accordingly, the court reiterates its finding that 9 U.S.C. § 208 allows incorporation of certain substantive elements of the F.A.A. to such cases, and that the F.A.A.'s statutory vacatur provisions are not in conflict with Article V in such cases.

Another such exception, which allows for modification of the award, is "[w]here there was an evident material miscalculation of figures . . . ." 9 U.S.C. § 11.

In this case AccessData argues that this Court should either modify or vacate the Arbitrator's award for two reasons. (Mot. Vacate 11 [Dkt. No. 7].) First, AccessData argues that the Arbitrator "made an award on a claim beyond his contractual authority." *Id*. Second, AccessData argues that the "arbitrator made a mathematical miscalculation by utilizing a formula that did not fulfill the express purposes of the award and the Agreement." *Id*.

### 1.    The Arbitrator Did Not Exceed His Authority

The court finds that the Arbitrator did not exceed his contractual authority when he awarded Privacy damages based on approximately 24 months of revenue. Under the F.A.A., "[w]here an arbitrator exceeds his contractual authority, vacation or modification of the award is an appropriate remedy." *Delta Queen Steamboat Co v.Dist. 2 Marine Engineers Beneficial Ass'n, AFL-CIO*, 889 F.2d 599, 602 (5th Cir. 1989). An arbitrator exceeds his power where he disregards the language of the parties' agreement and awards remedies that are contractually prohibited. *See Missouri River Servs., Inc. v. Omaha Tribe of Nebraska*, 267 F.3d 848, 855 (8th Cir. 2001).

But where parties "bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (alteration in original) (internal quotation marks omitted). Indeed, "[b]ecause the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of . . . the meaning of the contract that they have agreed to accept." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc*., 484 U.S. 29, 37-38 (1987). "Only if the arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of

economic justice rather than drawing its essence from the contract—may a court overturn his determination." *Sutter*, 133 S. Ct. at 2068 (internal quotation marks omitted). "So the sole question for [this court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id*.

AccessData and Privacy "bargained for the arbitrator's construction of their agreement." *Id*. The Agreement provided that any controversy arising from the Agreement would be settled by arbitration. (Agreement § 13.9 [Dkt. No. 2-7].) Additionally, the Agreement provided that "[t]he award rendered by the arbitrator will be final, binding, and, except as permitted by law, non-appealable." (*Id*.).

And the Arbitrator arguably "interpreted the parties' [Agreement]." The Agreement contained a provision providing that "[e]ach party's liability to the other party shall not exceed amounts paid or payable to AcessData by Distributor under this Agreement. Each party shall only be allowed to collect said amounts for liabilities that are incurred in the most recent 12 months." (Agreement § 7.4 [Dkt. No. 2-7].) The Arbitrator granted an award based on AccessData's sales for the entire period of the Agreement, approximately 24 months. (*See* Award 6, ¶ 8 [Dkt. No. 2-3]; *see also id.*7, ¶ 1.) AccessData argues that "the arbitrator's Award was beyond the authority of the Agreement since he awarded damages based on nearly two years of revenues even though the Agreement expressly limited liability to a one year period." (Mot. Vacate 11 [Dkt. No. 7].) The question is therefore whether Section 7.4 "expressly limited liability to a one year period." *Id*.

The court finds that Section 7.4 is not unambiguous and does not clearly limit AccessData's liability to a single 12 month period. The Agreement does not specify when the 12 month period for "each party's liability" begins. (*See* Agreement § 7.4 [Dkt. No. 2-7].) The Agreement could be interpreted to mean that each time AccessData breached the Agreement, a new

twelve month period began to run as to that breach. Or it could be interpreted to mean that the 12 month period is to be measured at the time the Arbitrator granted the award. But that is the point—the Agreement is subject to multiple reasonable interpretations. Because AccessData and Privacy contracted "to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of . . . the meaning of the contract that they have agreed to accept." *Misco*, 484 U.S. at 37-38. Thus, because the Agreement is not clear, the Arbitrator's interpretation stands.

Admittedly, the Arbitrator's logic in interpreting Section 7.4 is absent from the record. (*See* Disposition of Application for Correction of the Final Award 1 [Dkt. No. 2-6]).) ("[T]he tribunal does not believe that it exceeded its authority in reaching a fair, reasonable, equitable decision in compliance with the terms of the Agreement and with the language of Section 7.4 of that Agreement. The term 'liabilities' in that Section is not synonymous with 'damage' or 'loss.'") And the Arbitrator himself believed the Agreement was unambiguous. (Award 6 [Dkt No. 2-3].) ("Both sections [7.3 and 7.4] were clearly drafted and are not ambiguous. Claimant's damages claim falls within the parameters established by Section 7.4 of the Agreement.") But despite any deficiencies in the Arbitrator's opinion about whether the Agreement was unambiguous, the court must uphold the Award because the Arbitrator arguably "interpreted the parties' contract." *Sutter* 133 S. Ct. at 2068.

### 2. The Arbitrator Did Not Make a Mathematical Miscalculation

The court also finds that the Arbitrator did not make a mathematical miscalculation because he did not make a computation error in determining the total amount of the award. A district court may make an order modifying an arbitrator's award where "there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." 9 U.S.C. § 11(a). "By its terms, 'an evident ...

miscalculation of figures' concerns a computational error in determining the total amount of an award—what the Fourth Circuit calls a 'mathematical error appear[ing] on the face of the award.'" *Grain v. Trinity Health, Mercy Health Servs. Inc.*, 551 F.3d 374, 378-79 (6th Cir. 2008) (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co.,* 142 F.3d 188, 194 (4th Cir.1998)).

AccessData argues that the "arbitrator made a mathematical miscalculation by utilizing a formula that did not fulfill the express purposes of the award and the Agreement." (Mot. Vacate 11 [Dkt. No. 7].) But no computational "error appears on the face of the award," and AccessData has "not pointed to any such error." *Grain*, 551 F.3d at 379. "Instead of complaining that the arbitrator[] made an obvious numerical gaffe in computing the total award," AccessData argues that the Arbitrator did not fulfill the purpose of the award. *Id*. "Whatever else such an alleged error may be, it is not 'an evident material miscalculation of figures.'" *Id*. The court therefore declines to modify the Award on this basis.

## **CONCLUSION**

For the reasons discussed above, the Court DENIES Respondent's Motion to Vacate (Dkt. No. 7) and GRANTS Petitioner's Motion to Confirm (Dkt. No. 2).

SO ORDERED this 23rd day of April, 2015.

BY THE COURT:

Clark Waddoups
United States District Court Judge